ORIGINAL
FILED

NOV - 8 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1 | GOODWIN PROCTER LLP
2 | Patrick S. Thompson (State Bar No. 160804)
pthompson@goodwinprocter.com
Robert B. Bader (State Bar No. 218098)
3 | rbader@goodwinprocter.com
Three Embarcadero Center, 24th Floor
4 | San Francisco, California 94111
Telephone: (415) 733-6000
5 | Facsimile: (415) 677-9041

JCS

6 | Attorneys for Defendant
QUICKEN LOANS, INC.

7

8 | UNITED STATES DISTRICT COURT

9 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

CV 07    5680

10 | PROVIDENT FUNDING ASSOCIATES, L.P.,    Case No.

    Plaintiff,

11

v.    NOTICE OF REMOVAL OF CIVIL
12 |     ACTION (DIVERSITY JURISDICTION)

13 | QUICKEN LOANS, INC., and DOES 1    Removed from San Mateo County Superior
through 20,    Court, Case No. CIV 466470

14

    Defendants.

15

16 |     TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

17 | CALIFORNIA:

18 |     PLEASE TAKE NOTICE THAT defendant QUICKEN LOANS, INC. ("Quicken Loans")

19 | filed this Notice of Removal of this civil action to the United States District Court for the Northern

20 | District of California pursuant to 28 U.S.C. § 1441. Quicken Loans demonstrates that this case is

21 | properly removable for the following reasons:

22 |     1.    On October 9, 2007, Quicken Loans was served a copy of the Summons and

23 | Complaint for Declaratory Relief and Breach of Written Contract ("Complaint" or "Complt."). This

24 | Notice of Removal is therefore timely filed under 28 U.S.C. § 1446(b), having been filed within

25 | thirty (30) days of Quicken Loan's receipt of the Complaint. Pursuant to 28 U.S.C. § 1446(a), a

26 | copy of all of the documents served on Quicken Loans, the Summons and Complaint, is attached

27 | hereto as **Exhibit 1.** A copy of all other documents filed in this action in San Mateo County

28 | Superior Court as of the date of removal is attached hereto as **Exhibit 2.**

_Goodwin Procter LLP_
_Three Embarcadero Center, 24th Floor_
_San Francisco, California 94111_

1    2.    Plaintiff Provident Funding Associates, L.P. ("Provident") is a California limited

2  partnership with its principal place of business in Burlingame, California. Complt., ¶ 1. The general

3  and limited partners of Provident include: Provident Funding Group, Inc., Paul Paulsson, R. Craig

4  Pica, Ralph Pica, Doug Pica and Michelle Blake. Declaration of Robert B. Bader in Support of

5  Notice of Removal ("Bader Decl."), ¶¶ 2-4, Exhibits A-C.

6    3.    Provident Funding Group, Inc. is a corporation organized under the laws of the State

7  of California, with its principal place of business in Burlingame, California. Bader Decl., ¶¶ 2-3,

8  Exhibits A-B.

9    4.    Each of the individual general and limited partners is a citizen of California.

10    5.    Defendant Quicken Loans, Inc. is a corporation organized under the laws of the State

11  of Michigan, with its principal place of business in Livonia, Michigan. Complt., ¶ 2.

12    6.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a), and the action is

13  one that may be removed by Quicken Loans pursuant to 28 U.S.C. § 1441(b). This is a civil action

14  where the defendant is diverse in citizenship from the plaintiff. Specifically, Quicken Loans is a

15  citizen of Michigan and Provident and its partners are citizens of California and are not citizens of

16  Michigan.

17    7.    The amount in controversy as alleged by plaintiff exceeds the sum of $75,000,

18  exclusive of interest and costs. Specifically, Plaintiff alleges Quicken Loans breached a

19  Correspondent Seller Agreement ("Agreement") between the parties (1) by selling Provident

20  mortgage loans that are not in compliance with the Agreement (Complt., ¶¶ 8, 9, 15) and (2) by

21  failing and refusing to satisfy its mortgage repurchase and indemnity obligations to Provident under

22  the Agreement (Complt., ¶ 15). The amount in controversy requirement is exceeded for three

23  reasons. First, the total original principal balance remaining on the mortgage loans that Provident

24  claims Quicken Loans is obligated to repurchase from Provident exceeds $5.0 million, and the

25  current balance exceeds $4.0 million. *See* Declaration of Christopher Arsenault in Support of Notice

26  of Removal ("Arsenault Decl."), ¶ 3. Under the Agreement, Quicken Loans would be required to

27  pay Provident at least the current balance of all loans that must be repurchased. Agreement, § 6.02.

28  Second, the principal balance remaining on the mortgage loans that Provident claims Quicken Loans

Goodwin Procter LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

1    must provide an indemnity exceeds $4.0 million. Arsenault Decl., ¶¶ 3. Third, the mortgage loans

2    allegedly subject to repurchase are worth at least $75,000 less than their face value if plaintiff

3    establishes that the mortgage loans are not in compliance with the Agreement. Arsenault Decl., ¶ 5.

4    In the event of repurchase, Quicken Loans would be damaged, at least, in the amount measured by

5    the difference between the face amount of the repurchased loans and their actual value. *Id.*

6          8.    Although it files this Notice, and makes assertions herein about Provident's claims,

7    Quicken Loans denies liability and denies all of Provident's allegations that relate to liability.

8          9.    Removal of this case on the basis of diversity of citizenship is not precluded by

9    28 U.S.C. § 1441(b), because defendant is not a citizen of the State of California.

10         10.    Plaintiff and the clerk of the San Mateo County Superior Court will be properly and

11    timely served with copies of this Notice of Removal and attachments thereto.

12          Based on the foregoing, this Court has jurisdiction over this matter and Quicken Loans

13    accordingly prays that this Court take jurisdiction of this action to its conclusion and to final

14    judgment to the exclusion of any further proceedings in the State court in accordance with the law.

15        Dated: November 8, 2007        GOODWIN PROCTER LLP

16                                          Patrick S. Thompson
                                      Robert B. Bader

17                                          Three Embarcadero Center, 24th Floor
                                      San Francisco, California  94111

18                                          Telephone: (415) 733-6000
                                      Facsimile: (415) 677-9041

19

20                                        By _____

21                                          Attorneys for Defendant
                                      QUICKEN LOANS, INC.

22

23

24

25

26

27

28

*Provident Funding Associates, L.P. v. Quicken Loans, Inc., et al.* - NOTICE OF REMOVAL
CASE NO. _____

Goodwin Procter LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111

# EXHIBIT 1

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, Bar number, and address):*
Neil R. O'Hanlon, SBN 67018
HOGAN & HARTSON LLP
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
TELEPHONE NO.: (310) 785-4600    FAX NO.: (310) 785-4601
ATTORNEY FOR *(Name):* Plaintiff

**RECEIVED**

SEP 28 2007

**SUPERIOR COURT**
**CIVIL DIVISION**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO
STREET ADDRESS: 400 County Center
MAILING ADDRESS:
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME:

CASE NAME: Provident Funding Associates, L.P. v.
Quicken Loans, Inc., and Does 1 through 20

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | CIV 466470  JUDGE:  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

**1. Check one box below for the case type that best describes this case:**

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[X] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

**2.** This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [ ] Large number of separately represented parties
b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. [ ] Substantial amount of documentary evidence
d. [ ] Large number of witnesses
e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. [ ] Substantial postjudgment judicial supervision

**3.** Remedies sought *(check all that apply):* a. [X] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [ ] punitive

**4.** Number of causes of action *(specify):* 2 (declaratory relief and breach of written contract)

**5.** This case [ ] is [X] is not a class action suit.

**6.** If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: September 24, 2007

Neil R. O'Hanlon, SBN 67018
(TYPE OR PRINT NAME)

*(signature)* Neil R. O'Hanlon
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET    CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
  Auto (22)—Personal Injury/Property Damage/Wrongful Death
  Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
  Product Liability (*not asbestos or toxic/environmental*) (24)
  Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business Practice (07)
  Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
  Defamation (e.g., slander, libel) (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice (*not medical or legal*)
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
    Contract/Warranty Breach—Seller Plaintiff (*not fraud or negligence*)
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open book accounts) (09)
    Collection Case—Seller Plaintiff
    Other Promissory Note/Collections Case
  Insurance Coverage (*not provisionally complex*) (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment (*non-domestic relations*)
    Sister State Judgment
    Administrative Agency Award (*not unpaid taxes*)
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint (*not specified above*) (42)
    Declaratory Relief Only
    Injunctive Relief Only (*non-harassment*)
    Mechanics Lien
    Other Commercial Complaint Case (*non-tort/non-complex*)
    Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
  Partnership and Corporate Governance (21)
  Other Petition (*not specified above*) (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief from Late Claim
    Other Civil Petition

1 | HOGAN & HARTSON LLP
NEIL R. O'HANLON, SBN 67018
2 | 1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
3 | Tel. (310) 785-4600
Fax (310) 785-4601
4

**FILED**
SAN MATEO COUNTY

SEP 2 8 2007

Clerk of the Superior Court

By _____
DEPUTY CLERK

4

Attorneys for Plaintiff

5

6

7

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | FOR THE COUNTY OF SAN MATEO

10

11 | PROVIDENT FUNDING
ASSOCIATES, L.P.,

Case No. **CIV 4 6 6 4 7 0**

12 |                          Plaintiff,

**COMPLAINT FOR DECLARATORY
RELIEF AND BREACH OF WRITTEN
CONTRACT**

13

14 | vs.

15 | QUICKEN LOANS INC., and Does 1
through 20,

16 |                          Defendants.

17

18 | Plaintiff alleges:

19 | ### COMMON ALLEGATIONS

20 |      1.    At all times mentioned herein Plaintiff Provident Funding Associates, L.P.

21 | ("Provident") has been a California limited partnership.

22 |      2.    Provident is informed and believes and, on that ground, alleges that at all

23 | times mentioned herein Defendant Quicken Loans Inc. ("Quicken") has been a Michigan

24 | corporation.

25 |      3.    Provident is currently unaware of the true names and capacities of the

26 | defendants sued herein as Does 1 through 20 (the "Doe Defendants") and therefore sues the

27 | Doe Defendants by such fictitious names. Provident will amend this Complaint to allege

28 | the true names and capacities of the Doe Defendants when they are ascertained. Provident

1    is informed and believes and, on that ground, alleges that the Doe Defendants are the

2    officers, directors, shareholders, partners, agents, principals, alter egos, and/or co-

3    conspirators of the other defendants, and of each other, and that each of the defendants was

4    the agent, joint venturer, or employee of each of the other defendants and was acting within

5    the course and scope of such agency, joint venture, or employment with the advance

6    knowledge, acquiescence, or subsequent ratification of each of the other defendants.

7    Therefore, each of the Doe Defendants is liable to Provident as alleged herein.

8        4.    On or about October 1, 2006 Provident and Quicken entered into and

9    executed a written Correspondent Seller Agreement (the "Agreement"), pursuant to which

10   Quicken agreed to originate mortgage loans and sell them to Provident. A true and correct

11   copy of the Agreement is attached as Exhibit 1.

12       5.    Pursuant to Section 4.02 of the Agreement, Quicken made certain

13   representations and warranties to Provident concerning the mortgage loans to be sold to it

14   by Quicken, including without limitation that each mortgage loan would be in full

15   compliance with all applicable laws and satisfy applicable underwriting guidelines.

16   Pursuant to Section 5.02 of the Agreement, Quicken agreed to indemnify and hold

17   Provident harmless from damages, losses, costs, or expenses of any nature whatsoever

18   (including reasonable attorneys' fees and costs of suit) attributable to any breach by

19   Quicken of any representation, warranty, covenant, or obligation of Quicken under the

20   Agreement, which breach materially and adversely affected the value or marketability of

21   one or more mortgage loans ("material breach").

22       6.    Pursuant to Section 6.01 of the Agreement, Quicken agreed to repurchase

23   any mortgage loan sold to Provident within ten business days of receipt of written notice

24   from Provident of certain events and circumstances, including without limitation an

25   uncured material breach of a representation or warranty. Provident was also entitled to

26   require repurchase of a mortgage loan if an investor to whom Provident had sold a

27   mortgage loan purchased from Quicken demanded its repurchase by Provident due to the

28   inaccuracy of representations and warranties made by Quicken and/or loan quality defects

1  adversely affecting investors' interests in the mortgage loans. Provident was also entitled

2  to demand repurchase of a mortgage loan if a mortgagor failed to make the first monthly

3  payment within 60 days of its due date or the second or third monthly payments within 30

4  days of their payment due date ("early payment default").

5        7.     Provident has performed all covenants, conditions, and agreements required

6  on its part to be performed under the Agreement.

7        8.     During the period October 2006 through May 2007, Quicken sold numerous

8  mortgage loans to Provident pursuant to the Agreement. In connection with many of the

9  mortgage loans sold to Provident, there were early payment defaults, as a result of which

10  Provident will be required either to (1) repurchase the mortgage loans from the investors to

11  whom Provident had resold such mortgage loans, or (2) indemnify and hold harmless the

12  investors for the life of the mortgage loans from any damages, losses, costs, or expenses of

13  any nature whatsoever that the investors may subsequently incur.

14        9.     In addition to the mortgage loans sold by Quicken to Provident that

15  experienced early payment defaults, other mortgage loans have defects that constitute

16  material breaches of representations and warranties made by Quicken pursuant to the

17  Agreement. As a result of such defects, Provident will be required either to (1) repurchase

18  the mortgage loans from investors to whom Provident had resold such mortgage loans, or

19  (2) indemnify and hold harmless the investors for the life of the mortgage loans from any

20  damages, losses, costs, or expenses of any nature whatsoever that the investors may

21  subsequently incur.

22       10.    Provident has already sustained damages as a result of early payment defaults

23  in mortgage loans purchased from Quicken, defects in mortgage loans that constitute

24  material breaches of the representations and warranties made by Quicken in the

25  Agreement, and Quicken's refusal to meet its repurchase and indemnity obligations.

26  Provident has been unable to sell certain of the affected mortgage loans to investors,

27  requiring it to retain ownership of such mortgage loans, whose value has been adversely

28  affected by early payment defaults or other defects. Provident has also been required with

1   respect to certain mortgage loans that it purchased from Quicken (1) to agree to indemnify

2   investors against any loan-related losses; and (2) in connection with certain mortgage loans

3   serviced by Provident involving monetary defaults by mortgagors, to advance accrued but

4   unpaid interest owing to investors.

5       11.    Provident gave timely written notices of default to Quicken for the mortgage

6   loans referenced in Paragraphs 8 and 9 and has demanded that pursuant to the Agreement

7   Quicken repurchase certain of the mortgage loans and indemnify Provident as to other

8   mortgage loans. A schedule of mortgage loans as to which repurchase has been demanded

9   is attached as Exhibit 2. A schedule of mortgage loans as to which indemnity has been

10  demanded is attached as Exhibit 3. Whether Quicken is required to repurchase or

11  indemnify as to a particular mortgage loan is determined by several factors, including the

12  nature of the mortgagor default or mortgage loan defect, whether such default or defect can

13  be or has been remedied, and whether an investor is willing to accept an indemnification as

14  opposed to requiring repurchase. In breach of the Agreement, Quicken has failed and

15  refused to repurchase the mortgage loans or agree to indemnify Provident as to the

16  mortgage loans set forth in Exhibits 2 and 3.

17              **FIRST CAUSE OF ACTION**

18              **(For Declaratory Relief)**

19      12.    Provident contends that Quicken is in default of its obligations under the

20  Agreement as a result of its failure and refusal to (1) repurchase certain mortgage loans and

21  (2) indemnify and hold harmless Provident for the life of other mortgage loans from any

22  damages, losses, costs, or expenses of any nature whatsoever that Provident may incur.

23  Provident further contends that should Quicken fail to indemnify Provident with respect to

24  such mortgage loans where indemnity and not repurchase has been demanded, then

25  Quicken is obligated to repurchase such loans.

26      13.    Provident is informed and believes and, on that ground, alleges that Quicken

27  contends to the contrary.

28

14.    By reason of the foregoing contentions, an actual controversy has arisen and presently exists between Provident and Quicken. A declaration is appropriate so that the parties will be aware of their respective rights and remedies.

## SECOND CAUSE OF ACTION

### (For Breach of Written Contract)

15.    Quicken breached the Agreement and the representations and warranties contained therein by selling Provident mortgage loans with defects that did not meet the requirements of the Agreement. Quicken has further breached the Agreement by failing and refusing to meet its repurchase and indemnity obligations to Provident with respect to the mortgage loans set forth in Exhibits 2 and 3.

16.    As a direct and proximate result of the foregoing breaches of the Agreement by Quicken, Provident has been damaged in an amount not presently known, according to proof.

WHEREFORE, Provident prays judgment as follows:

1.    For a declaration in accordance with Paragraph 12;

2.    For damages in an amount according to proof;

3.    For costs of suit, including such reasonable attorney's fees as may be allowed by law;

4.    For such other, further, or different relief as the Court may deem proper.

DATED: September 24, 2007          HOGAN & HARTSON LLP

By _Neil R. O'Hanlon_
Neil R. O'Hanlon

Attorneys for Plaintiff

1

**VERIFICATION**

2          I have read the foregoing COMPLAINT FOR DECLARATORY RELIEF AND

3    BREACH OF WRITTEN CONTRACT and know its contents.

4          I am an officer of Provident Funding Associates, L.P., a party to this action, and am

5    authorized to make this verification for and on its behalf, and I make this verification for

6    that reason.  I am informed and believe and on that ground allege that the matters stated in

7    the foregoing document are true.

8          Executed on September 2⁄7, 2007, at Burlingame, California.

9          I declare under penalty of perjury under the laws of the State of California that the

10   foregoing is true and correct.

11

12          _____

13                    Michelle Blake

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY RELIEF
AND BREACH OF WRITTEN CONTRACT

# PROVIDENT FUNDING ASSOCIATES, L.P.

## CORRESPONDENT SELLER AGREEMENT

**THIS CORRESPONDENT SELLER AGREEMENT** is made this 1st day of October, 2006, by and between **Provident Funding Associates, L.P.** ("Provident Funding"), and **Quicken Loans Inc.,** a corporation organized under the laws of the State of Michigan (the "Seller"), with reference to the following facts.

A.    The Seller intends to originate Mortgage Loans and desires to sell such Mortgage Loans to Provident Funding.

B.    Provident Funding desires to purchase Mortgage Loans from the Seller.

**NOW THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

I.    **DEFINITIONS**

For purposes of this Agreement the following capitalized terms shall have the respective meanings set forth below:

**Agreement:** This Correspondent Seller Agreement, including all exhibits, schedules amendments and supplements hereto, and the Provident Funding Correspondent Web Site, as the same may be revised from time to time as provided herein.

**Appraised Value:** With respect to any Mortgaged Property, the lesser of (i) the value thereof as determined by an appraisal made for the originator of the related Mortgage Loan at the time of origination of such Mortgage Loan by an appraiser who meets the minimum appraisal requirements of FNMA or FHLMC, or (ii) the purchase price (plus added value of documented improvements) of such Mortgaged Property by the Mortgagor at the time of origination of such Mortgage Loan.

**Assignment of Mortgage:** An individual assignment of a Mortgage, notice of transfer or equivalent instrument in recordable form sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to give record notice of the sale of the related Mortgage Loan to Provident Funding.

EXHIBIT    1

**Bailee Letter:** A writing from a Warehouse Lender to Provident Funding, satisfactory in form and content to Provident Funding in its reasonable discretion, which relates to a Mortgage Loan to be sold to Provident Funding hereunder and which contains a release, upon the occurrence of certain events, of all of such Warehouse Lender's right, title and interest (including without limitation security interests) in and to such Mortgage Loan.

**Business Day:** Any day other than a Saturday or Sunday, or a day on which banking and savings and loan institutions in the State of California or the State of Michigan are authorized or obligated by law or executive order to be closed.

**Case:** Provident Funding's communications system (sometimes referred to by Provident Funding as the Case System), accessible through the Provident Funding Correspondent Web Site, pursuant to which the Seller must raise all inquiries, and make all other communications (except as may be otherwise provided herein), concerning a Mortgage Loan with Provident Funding.

**Condemnation Proceeds:** All awards, compensation and settlements relating to a taking of all or part of a Mortgaged Property by exercise of the power of condemnation or the right of eminent domain.

**Cut-Off Date:** With respect to each Mortgage Loan Package, the third Business Day prior to the related Funding Date, or such other date agreed to by the Seller and Provident Funding and set forth in the related Purchase Price and Terms Agreement.

**Due Date:** The first day of each month.

**Fannie Mae or FNMA:** Federal National Mortgage Association or any successor thereto.

**Freddie Mac or FHLMC:** Federal Home Loan Mortgage Corporation or any successor thereto.

**Funding Date:** The date on which Provident Funding purchases a Mortgage Loan and pays the Purchase Price for such Mortgage Loan, as set forth in the related Purchase Price and Terms Agreement. This is also known as the Purchase Date.

**HUD:** The United States Department of Housing and Urban Development or any successor thereto.

**Impound/Escrow Adjustment:** The amount that is deducted from the Purchase Price for a Mortgage Loan on account of the existence of an impound/escrow account with respect to such Mortgage Loan. The amount of the Impound/Escrow Adjustment is set forth on the related Purchase Price and Terms Agreement and may be referred to therein as the "Escrow Balance."

**Impound/Escrow Payments:** The amounts constituting ground rents, taxes, assessments, water charges, sewer rents, fire, wind, hazard and flood insurance premiums, and other payments required to be impounded or escrowed by the Mortgagor with the Mortgagee pursuant to the terms of any Mortgage Note or Mortgage

**Insurance Proceeds:** With respect to each Mortgage Loan, proceeds of insurance policies insuring the related Mortgaged Property.

**Liquidation Proceeds:** Amounts, other than Insurance Proceeds and Condemnation Proceeds, received in connection with the liquidation of a defaulted Mortgage Loan through trustee's sale, foreclosure sale or otherwise, other than amounts received following the acquisition of REO Property.

**Loan-to-Value Ratio or LTV:** With respect to any Mortgage Loan as of any date of determination, the lesser of the ratio on such date of: (i) the outstanding principal amount of such Mortgage Loan to the Appraised Value of the related Mortgaged Property, or (ii) the outstanding principal amount of such Mortgage Loan to the sales price of such Mortgaged Property, if such a sale occurred at origination of such Mortgage Loan.

**Mandatory Commitment:** An obligation of the Seller, specified in the related Price and Terms Agreement, to sell to Provident Funding hereunder the Mortgage Loan specified in such Purchase Price and Terms Agreement.

**Mandatory Commitment Amount:** The original commitment amount specified in the applicable Purchase Price and Terms Agreement.

**MERS:** The Mortgage Electronic Registration System, Inc., a corporation organized and existing under the laws of the State of Delaware, or any successor thereto.

3

Rev. 11/14/2006

**MERS Mortgage Loan:** Any Mortgage Loan registered with MERS on the MERS System.

**MERS System:** The system of recording transfers of mortgages electronically maintained by MERS.

**MIN:** The Mortgage Identification Number for any MERS Mortgage Loan.

**Monthly Payment:** With respect to each Mortgage Loan, the scheduled combined payment of principal, interest, and Impound/Escrow Payments payable by the Mortgagor under the related Mortgage Note on the applicable Due Date.

**Mortgage:** The mortgage, deed of trust or other instrument creating a first lien on Mortgaged Property securing the related Mortgage Note.

**Mortgage File:** The file of documents pertaining to a particular Mortgage Loan, which file contains all documents required by the Provident Funding Correspondent Web Site, including without limitation, the related original Mortgage Note, Assignment of Mortgage and Bailee Letter.

**Mortgage Loan:** Each Mortgage Loan which is the subject of a Purchase Price and Terms Agreement. In the case of each Mortgage Loan which is sold, assigned and transferred to Provident Funding pursuant to this Agreement, the phrase Mortgage Loan includes, without limitation the related Mortgage File, the Monthly Payments, all prepayments of principal and/or interest, Liquidation Proceeds, Condemnation Proceeds, Insurance Proceeds, REO Disposition proceeds, and all other rights, benefits, proceeds and obligations arising from or in connection with such Mortgage Loan.

**Mortgage Loan Documents:** The Mortgage Note, the Mortgage and the other documents pertaining to a Mortgage Loan as set forth in the Provident Funding Correspondent Web Site or as required to be a part of the related Mortgage File.

**Mortgage Loan Schedule:** the schedule of Mortgage Loans annexed to the related Purchase Price and Terms Letter, which schedule sets forth the following information with respect to each Mortgage Loan in the related Mortgage Loan Package:

(1) the Seller's Mortgage Loan identifying number;

(2) the Mortgagor's name;

(3) the street address of the Mortgaged Property including the city, state and zip code;

(4) a code indicating whether the Mortgaged Property is owner-occupied, a second home or an investor property;

(5) the type of residential property constituting the Mortgaged Property;

(6) the original months to maturity;

(7) the Appraised Value (including the purchase price of the Mortgaged Property, if applicable);

(8) the interest rate applicable to the Mortgage Note at origination and as of the related Cut-off Date;

(9) the Mortgage Loan origination date;

(10) the actual interest paid through date;

(11) the scheduled interest paid through date;

(12) the stated maturity date of the Mortgage Loan;

(13)the amount of the Monthly Payment at origination and as of the related Cut-off Date;

(14) the original principal amount of the Mortgage Loan;

(15) LTV at origination;

(16) a code indicating the purpose of the Mortgage Loan (*i.e.*, purchase, rate and term refinance, equity take-out refinance);

(17) a code indicating the documentation style (*i.e.*, full, alternative or reduced);

(18) the date on which the first Monthly Payment is due subsequent to the origination date;

(19) a code indicating whether or not the Mortgage Loan is insured as to payment defaults by a Primary Mortgage Insurance Policy; and, in the case of any Mortgage

Rev. 11/14/2006

Loan which is insured as to payment defaults by a Primary Mortgage Insurance Policy, the name of the provider of such Primary Mortgage Insurance Policy;

(20) a code indicating whether or not the Mortgage Loan is subject to a Prepayment Charge and, if so, the term of the Prepayment Charge and such other information necessary to calculate such Prepayment Charge;

(21) the Private Mortgage Insurance Policy certificate number, if applicable;

(22) the Private Mortgage Insurance Policy coverage percentage, if applicable;

(23) a code indicating the credit score of the Mortgagor at the time of origination of the Mortgage Loan;

(24) the specific loan/underwriting program of each Mortgage Loan as assigned by the Seller pursuant to the Underwriting Standards;

(25) with respect to each adjustable rate Mortgage Loan, the first adjustment date and the adjustment date frequency;

(26) with respect to each adjustable rate Mortgage Loan, the gross margin;

(27) with respect to each adjustable rate Mortgage Loan, the maximum mortgage interest rate under the terms of the Mortgage Note;

(28) with respect to each adjustable rate Mortgage Loan, the minimum interest rate under the terms of the Mortgage Note;

(29) with respect to each adjustable rate Mortgage Loan, the initial rate cap and periodic rate cap;

(30) with respect to each adjustable rate Mortgage Loan, the first adjustment date immediately following origination and the related Cut-off Date;

(31) with respect to each adjustable rate Mortgage Loan, the index;

(32) with respect to each adjustable rate Mortgage Loan, a code indicating whether the Mortgage Loan is a convertible Mortgage Loan;

(33) the loan type (*i.e.*, fixed, adjustable; 2/28, 3/27, 5/25, etc.);

6

Rev. 11/14/2006

(34) a code indicating whether the Mortgage Loan is a MERS Mortgage Loan and, if so, the corresponding MIN;

(35) a code indicating the form of appraisal in the related Mortgage File (i.e. form 1004, 2055, etc.); and

(36) a code indicating if the Mortgage Loan is an interest-only Mortgage Loan (including any Mortgage Loans with any interest-only features) and, if so, the term of the interest-only period of such Mortgage Loan; and

(37) a code indicating whether the Mortgaged Property is subject to a First Lien or a Second Lien.

**Mortgage Note:** The original executed promissory note or other evidence of the Mortgage Loan indebtedness of a Mortgagor.

**Mortgaged Property:** The Mortgagor's real property securing repayment of a related Mortgage Note, consisting of a fee simple interest in real property improved by a Residential Dwelling.

**Mortgagee:** The mortgagee or beneficiary named in the Mortgage and the successors and assigns of such mortgagee or beneficiary.

**Mortgagor:** The obligor on a Mortgage Note, the owner of the related Mortgaged Property and the grantor or mortgagor named in the related Mortgage, and such grantor's or mortgagor's successors in title to the Mortgaged Property.

**Officer's Certificate:** A certificate signed by: (i) the Chairman of the Board, the Vice Chairman of the Board, the President or a Vice President, and (ii) the Treasurer, the Secretary, one of the Assistant Treasurers or Assistant Secretaries, of the Person on behalf of whom such certificate is being delivered.

**Package Due Date:** The date which is specified on the applicable Purchase Price and Terms Agreement. The Package Due Date is the date by which the complete original Mortgage File (including without limitation the related Assignment of Mortgage (for Mortgage Loans that are not registered with MERS), Note and, if applicable, Bailee Letter) must be received by Provident Funding in purchasable condition in order to ensure the related Mortgage Loan will be purchased at the price stipulated in the related Purchase Price and Terms Agreement.

**Pair Off Fee:**  A monetary assessment charged to the Seller whenever a Mortgage Loan which is the subject of a Mandatory Commitment is not purchased by Provident Funding hereunder due to (i) any failure of such Mortgage Loan to satisfy the conditions, or (ii) any failure of the Seller to satisfy any other requirement hereunder relating to such Mortgage Loan.

**Pair Off Fee Assessment Date:**  The date which is specified in the applicable Purchase Price and Terms Agreement.

**Pair Off Fee Calculation:**  As of the Pair Off Fee Assessment Date, the product of: (a) the difference between the Mandatory Commitment Amount (less the Pool Tolerance) and the Purchased Principal Balance and (b) the difference between (i) the Purchase Price Percentage specified in the original related Purchase Price and Terms Agreement, and (ii) the final buy price that would have been specified for such Mortgage Loan had such final buy price been calculated on such Pair Off Fee Assessment Date.

**Person:**  An individual, corporation, partnership, limited liability company, joint venture, association, joint-stock company, trust, unincorporated organization or government, or any agency or political subdivision thereof.

**Pool Tolerance:**  The amount set forth in the applicable Purchase Price and Terms Agreement.

**Premium:**  The portion of the Purchase Price attributable to the principal balance of the related Mortgage Loan, which portion exceeds par.  Par is expressed as 100%. Accordingly, if the amount paid for the principal balance of such Mortgage Loan is 101.125%, the Premium would equal 1.125% of such principal balance.

**Prepayment Charge:**  With respect to each Mortgage Loan, the charge (if any) that is assessed if the Mortgagor prepays such Mortgage Loan as provided in the related Mortgage Note or Mortgage.

**Private Mortgage Insurance Policy:**  The policy of private mortgage guaranty insurance (including all endorsements thereto) issued with respect to a Mortgage Loan, if any, or any replacement policy that meets the current published guidelines of Fannie Mae or Freddie Mac.

**Private Mortgage Insurer:**  The named insurer under any Private Mortgage Insurance Policy.

8

**Purchase Date**: The date on which Provident Funding purchases a Mortgage Loan and pays the Purchase Price for such Mortgage Loan, as set forth in the related Purchase Price and Terms Agreement. This is also known as the Funding Date.

**Purchase Price**: The net amount paid on the applicable Purchase Date by Provident Funding to the Seller for the related Mortgage Loan, as set forth in the related Purchase Price and Terms Agreement.

**Purchase Price and Terms Agreement**: A letter in the form of Exhibit A attached hereto and incorporated herein by reference, which sets forth the Purchase Price Percentage and other terms relating to the sale of a Mortgage Loan by the Seller to Provident Funding (including, without limitation, any and all schedules attached thereto).

**Purchased Principal Balance**: As to each Mortgage Loan, the original principal amount of such Mortgage Loan minus all payments of principal received with respect to such Mortgage Loan on or before the Cut-Off Date for such Mortgage Loan.

**REO Disposition**: The final sale by Provident Funding of any REO Property.

**REO Property**: A Mortgaged Property acquired as a result of the liquidation of a Mortgage Loan.

**Repurchase Price**: An amount calculated pursuant to Section 6.02 to satisfy a repurchase obligation under Section 6.01 or any other provisions of this Agreement.

**Residential Dwelling**: Any one of the following: (i) a detached one-family dwelling, (ii) a detached two-to-four-family dwelling, (iii) an attached single family dwelling, or (iv) certain approved attached two-to-four-family dwellings.

**Seller's Wire Instructions**: The wire instructions provided by the Seller to Provident Funding, as set forth in the applicable Purchase Price and Terms Agreement.

**Service Release Premium or SRP**: A fee paid by Provident Funding to the Seller for the purchase of the income stream realized from the servicing of a Mortgage Loan. Such fee represents a portion of the Purchase Price Percentage for such Mortgage Loan, and is specified in the related Purchase Price and Terms Agreement (and is referred to therein as the "Final SRP").

9

**Servicing Transfer Date:** With respect to each Mortgage Loan, the date or dates set forth in the related Purchase Price and Terms Agreement (or as otherwise agreed in writing by Provident Funding and the Seller) upon which the actual transfer of servicing responsibilities for any Mortgage Loan subject to such Purchase Price and Terms Agreement is transferred from the Seller to Provident Funding or its designee.

**Underwriting Guidelines:** As to each Mortgage Loan, and as specified in the applicable Purchase Price and Terms Agreement, the Seller's written underwriting guidelines in effect for the applicable loan program, or those of Fannie Mae or Freddie Mac.

**Warehouse Lender:** Any lender providing financing to the Seller for the purpose of originating a Mortgage Loan and which has a security interest in such Mortgage Loan as collateral for the obligation of the Seller to such lender.

II.        **PURCHASE AND SALE OF MORTGAGE LOANS**

2.01    **Agreement to Purchase and Sell:** The Seller agrees to sell and Provident Funding agrees to purchase from time to time Mortgage Loans in accordance with the terms and subject to the conditions of this Agreement (including the applicable Purchase Price and Terms Agreement.

2.02    **Requirements of Mortgage Loans:** Each of the Mortgage Loans offered by the Seller to Provident Funding pursuant to this Agreement shall satisfy and conform to each of the following requirements (in addition to all other requirements set forth in this Agreement and the Provident Funding Correspondent Web Site):

A.  Each Mortgage Loan shall be closed, funded and fully secured by a first lien Mortgage on a Residential Dwelling which is eligible in all respects, except for the outstanding principal balance, for inclusion in Fannie Mae or Freddie Mac pools of mortgage backed securities or in privately issued mortgage backed securities. Loans for purposes of constructing properties will not be accepted (other than "modified to perm" loans). HUD/FHA, VA and Farmers Home Administration loans (Government Loans) will not be accepted.

B.  Each Mortgage Loan shall bear interest as specified in the related Mortgage Loan Schedule. Each Mortgage Loan shall as of the Funding Date comply in all material respects with the requirements of this Agreement.

10

C.  Each Mortgage Loan shall be originated by the Seller, not by a correspondent or broker of the Seller or by any other person or entity unless the Seller has received specific approval to the contrary in writing by Provident Funding. For purposes of this subsection 2.02C the word "originated" shall include all of the following steps: (i) the Seller obtaining a loan application from a borrower; (ii) subject to subsections 2.02E and 2.02G, the Seller doing all of the processing of the Mortgage Loan package; (iii) such Mortgage Loan being closed in the name of the Seller; and (iv) the Seller being at all applicable times capable of funding such Mortgage Loan, and actually funding such Mortgage Loan with its own resources and not the resources of Provident Funding.

D.  Each Mortgage Loan purchased will have a Purchased Principal Balance as of the Funding Date in an amount which falls between the minimum and maximum (if any) loan amounts specified, as of such Funding Date, for the applicable loan program or category on the Provident Funding Correspondent Web Site.

E.  The Seller shall be responsible for the proper closing of each Mortgage Loan. The Seller shall, to the extent necessary, interim service the Mortgage Loans in accordance in all material respects with

F.  Each Mortgage Loan must comply with Section 2.06 concerning the review and approval thereof by Provident Funding prior to purchase. In addition each Mortgage Loan must comply in all material respects with all of the terms and conditions of (i) this Agreement, (ii) the Purchase Price and Terms Agreement, and (iii) the Underwriting Guidelines.  Upon payment by Provident Funding to the Seller of the Purchase Price for a Mortgage Loan hereunder, such Mortgage Loan shall not be encumbered in favor of a Warehouse Lender or any third Person or Persons.

G.  A Private Mortgage Insurance Policy will be required on all Mortgage Loans having greater than an 80% Loan-to-Value Ratio, as well as on certain other Mortgage Loans as determined in Provident Funding's sole discretion from time to time.  Each such Private

11

Mortgage Insurance Policy must be satisfactory in form and content to Provident Funding, in its sole but reasonable discretion, and issued by a Private Mortgage Insurer satisfactory to Provident Funding, in its sole but reasonable discretion.

H. The Mortgaged Property for any Mortgage Loan must be owned entirely by one or more individuals (or a intervivos trust meeting any applicable Fannie Mae requirements), and each such individual must mortgage his or her entire respective undivided interest in such Mortgaged Property for the benefit of Provident Funding so that Provident Funding holds a first lien Mortgage on the entire legal and beneficial interest in such Mortgaged Property.

I. Notwithstanding anything herein to the contrary, it is understood and agreed that: (i) certain documents and disclosures relating to the Mortgage Loan, including, without limitation, the application for such Mortgage Loan (but excluding the Note, Mortgage, any applicable powers of attorney, and Assignments of Mortgage) may be provided by the Seller and/or may be executed by the Mortgagor electronically, in compliance with the federal Electronic Signatures in Global and National Commerce Act ("E-SIGN") and, if applicable, the Uniform Electronic Transactions Act ("UETA") adopted by the state in which the electronic record (*i.e.*, the contract or other record created, generated, sent, communicated, received, or stored by electronic means) relating to such document or disclosure is initiated; and (ii) the Seller may also deliver a portion of the Mortgage File to Provident Funding in the form of a CD ROM or copies reproduced from electronic images of original documents ("Original Documents") stored on CD ROM or magnetic tape ("Imaged Documents"), not to include any documents the originals of which are required to be delivered pursuant to this Agreement ("Original Documents") stored on magnetic tape or through other electronic means.

2.03   **Pre-Purchase Review:** In order for a Mortgage Loan to be eligible for purchase by Provident Funding pursuant to this Agreement, the related Mortgage File (containing all documents required under this Agreement and/or the applicable Purchase Price and Terms Agreement) must be submitted to Provident Funding or made available for Provident Funding's review, in complete and purchasable

12

form, no later than the Package Due Date for such Mortgage Loan specified in the applicable Purchase Price and Terms Agreement.

If a Mortgage File is not delivered or made available as aforesaid by the related Package Due Date for any reason whatsoever, Provident Funding shall have no obligation to review, provide conditions, or purchase the related Mortgage Loan, unless otherwise agreed by Provident Funding. If such Mortgage File is delivered by such Package Due Date in complete and purchasable form, Provident Funding will promptly review such Mortgage File. If any deficiencies (which deficiencies would, if discovered after the applicable Funding Date, constitute a breach of a representation, warranty or covenant by the Seller under this Agreement) are found in such review, Provident Funding will so notify the Seller by providing prompt written notice to the Seller with a detailed explanation of any such deficiencies and a description of any and all conditions (the "Conditions") that must be satisfied to cure any such deficiencies. The Seller will have until the Business Day immediately preceding the Funding Date to remedy all such Conditions. If all such Conditions are satisfactorily remedied within the time period specified in the preceding sentence, in Provident Funding's sole but reasonable discretion, or if no deficiencies were found in the review by Provident Funding, then in either such event Provident Funding shall give the Seller written notice of the satisfaction of such Conditions, and such Mortgage Loan will be purchased in accordance with the terms of this Agreement and the applicable Purchase Price and Terms Agreement.

Seller acknowledges that in order for a Mortgage Loan to be purchased by Provident Funding hereunder, the Seller must have satisfied all of the terms of this Agreement and of the related Purchase Price and Terms Agreement (including, without limitation, any Conditions) by no later than the Business Day immediately preceding the applicable Funding Date (as identified in the applicable Purchase Price and Terms Agreement).

If, with respect to any Mortgage Loan, any and all such Conditions are not satisfactorily remedied, in Provident Funding's sole but reasonable discretion, by the close of business on the Business Day immediately preceding the Funding Date, Provident Funding shall have no obligation to purchase the related Mortgage Loan.

2.04    **Pair Off Fees:**  If a Mortgage Loan which is the subject of a Mandatory Commitment is not purchased by Provident Funding because the Seller failed to

satisfy any applicable Condition related to such Mortgage Loan, the Seller shall pay Provident Funding a Pair Off Fee calculated pursuant to the Pair Off Fee Calculation. Each Pair Off Fee will be due and payable as soon as demand is made therefor pursuant to written notice by Provident Funding to the Seller.

2.05   **Books and Records:**  The sale of each Mortgage Loan hereunder shall be reflected on the Seller's balance sheet and other financial statements as a sale of assets by the Seller. The Seller shall be responsible for maintaining, and shall maintain, a complete set of books and records for each Mortgage Loan which shall be clearly marked to reflect the ownership (after the applicable Funding Date) of such Mortgage Loan by Provident Funding, for so long as is required by applicable law.

2.06   **Property Tax Payments:**  For each Mortgage Loan which is sold pursuant to this Agreement, it shall be the Seller's responsibility to see that all property taxes on the related Mortgaged Property which are due and payable prior to or within thirty (30) days after the applicable Purchase Date are paid in full.  The Seller shall prepare and forward to Provident Funding a statement showing the next property tax payment due date for each Mortgage Loan purchased by Provident Funding hereunder.  All applicable tax receipts relating to such Mortgaged Property are to be promptly forwarded by the Seller upon receipt to Provident Funding.  All new tax bills relating to such Mortgaged Property received by the Seller and which the Seller is not obligated to pay pursuant to the foregoing provisions shall be promptly forwarded to Provident Funding to permit the payment thereof prior to the applicable penalty date.

2.07   **Hazard and Flood Insurance Payments:**  For each Mortgage Loan which is sold pursuant to this Agreement, it shall be the Seller's responsibility to see that all hazard and flood insurance premiums for insurance required with respect to such Mortgage Loan which are due and payable prior to or within thirty (30) days after the applicable Purchase Date are paid in full. All new insurance premium bills relating to such Mortgage Loan received by the Seller and which the Seller is not obligated to pay pursuant to the foregoing provisions will be promptly forwarded to Provident Funding.

2.08   **Purchase Price:**  The Purchase Price paid by Provident Funding for each Mortgage Loan purchased hereunder shall be the sum of (a) the product of the

14

Purchase Price Percentage and the Purchased Principal Balance and (b) accrued interest on the Purchased Principal Balance of the related Mortgage Loan through the day preceding the Funding Date at the interest rate under the applicable Mortgage Note. The Seller agrees that servicing on each Mortgage Loan purchased hereunder will be transferred to Provident Funding on the Servicing Transfer Date. The Seller shall be responsible to collect any payments from the applicable borrower which are due prior to such first payment to Provident Funding. As a result, the parties shall make an appropriate adjustment to reflect this state of facts in the related Purchase Price and Terms Agreement. Provident Funding shall own and be entitled to receive: (a) with respect to each Mortgage Loan purchased by Provident Funding pursuant to this Agreement, all principal payments due, and all other recoveries of principal received, after the related Purchase Date, and (b) with respect to each Mortgage Loan purchased by Provident Funding hereunder, all payments or other recoveries of interest on the portion of the principal amount of such Mortgage Loan which is owned by Provident Funding. For the purposes of the Agreement, payments of principal and interest on any Mortgage Loan purchased pursuant to this Agreement which constitute prepayments of amounts received after the applicable Purchase Date shall be the property of Provident Funding, and shall be taken into account in the calculation of the applicable Purchase Price. The Seller shall remit all such prepaid amounts to Provident Funding on the related Servicing Transfer Date.

**2.09**   **Ownership of Mortgage Loan:**   Upon the purchase of a Mortgage Loan hereunder by Provident Funding, and the receipt by the Seller of the applicable Purchase Price, the ownership of such Mortgage Loan and the related Mortgage Note, Mortgage, Mortgage Loan Documents and Mortgage File shall be vested in Provident Funding and the ownership of all records and documents with respect to such Mortgage Loan prepared by or which come into the possession of the Seller shall immediately vest in Provident Funding and shall be delivered promptly by the Seller to Provident Funding.

**2.10**   **Notices.** The Seller shall notify each insurance carrier providing insurance with respect to each Mortgage Loan or the related Mortgaged Property, including without limitation the hazard insurance, flood insurance and mortgage insurance carriers, of the sale of such Mortgage Loan to Provident Funding, and cause each such insurance carrier to update the loss payee, mortgagee or such other

15

similar clauses of the applicable insurance policies as may be specified by Provident Funding, in favor of Provident Funding in a manner satisfactory to Provident Funding in its reasonable discretion. The Seller also is obligated to notify MERS, in accordance with all applicable rules and regulations, of such sale and to comply with all servicing transfer requirements of RESPA. The Seller also shall give such other notices and take such other actions as Provident Funding may require from time to time in its reasonable discretion for the purpose of effecting the transfer to Provident Funding of each Mortgage Loan, together with all rights, interests, contracts and privileges relating thereto, purchased by Provident Funding hereunder. All such notices and other actions will be given and performed on the Purchase Date for such Mortgage Loan or no later than the close of business on the first Business Day after such Purchase Date. The Seller shall not give any such notice or take any such action before such Purchase Date.

III.    **POST SETTLEMENT OBLIGATIONS**

3.01    **Early Prepayment Policy:**  In the event that (i) Provident Funding paid one or both of a Premium and a Service Release Premium in connection with the purchase of a Mortgage Loan and (ii) such Mortgage Loan is prepaid in full within ninety (90) days after the related Purchase Date, the Seller shall immediately pay to Provident Funding the full amount of such Premium and such Service Release Premium, as applicable; provided, however, that the Seller's obligation to make any such payment (a) shall not exist if the applicable Mortgage Loan was refinanced by Provident Funding, or any affiliate thereof and (b) is contingent upon the Seller's receipt from Provident Funding of written notice of such prepayment, by no later than ninety (90) days following the date of such prepayment.

3.02    **Trailing Documents:**  Seller is to provide to Provident Funding the following documents within one hundred-eighty (180) days after the Purchase Date, or two hundred-seventy (270) days after the Purchase Date if documentation is provided by the seller evidencing that such delay is the sole result of the applicable County Recorders Office:

- Copy of the Final Title Policy
- Original Recorded Mortgage/Deed of Trust

16

- Original Recorded Assignment (for each Mortgage Loan that is not a MERS Mortgage Loan)
- Copy of the Final HUD-1

To the following address with a cover page listing borrower name, loan number, and document(s) included in each shipment;

> Trailing Documents Supervisor
> 1235 North Dutton Avenue, Suite E
> Santa Rosa, CA 95401

Failure to deliver the Copy of the Final Title Policy, the Original Recorded Mortgage/Deed of Trust, and/or the OrginalOriginal Recorded AssignementAssignment (for each Mortgage Loan that is not a MERS Mortgage Loan) within the time period required will result in a one-time fee of $50.00 per document; upon receipt of such fee, Provident Funding shall thereafter be responsible for obtaining the applicable document.

3.03    **Rights to Mortgage Insurance:** Mortgage insurance required on all Mortgage Loans purchased by Provident Funding hereunder must be purchased from a Private Mortgage Insurer satisfactory to Provident Funding in its sole but reasonable discretion.   In each case where such Private Mortgage Insurer transfers all or any portion of such insurance to any affiliate or subsidiary of the Seller, the Seller shall cause such affiliate or subsidiary to transfer such insurance, together with all compensation received by such affiliate or subsidiary from such Private Mortgage Insurer with respect thereto, to Provident Funding's captive mortgage reinsurance company upon Provident Funding's purchase of the related Mortgage Loan hereunder.

3.04    **Survival of This Part:** The rights of Provident Funding under this Article III shall survive termination of this Agreement and the resale of each Mortgage Loan by Provident Funding, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage or the examination of or failure to examine, any Mortgage File by Provident Mortgage.

**IV    REPRESENTATIONS AND WARRANTIES OF THE SELLER**

To induce Provident Funding to enter into this Agreement and to purchase Mortgage Loans hereunder, the Seller warrants and represents the truth and accuracy of each of the following warranties and representations, both on the date hereof and on each Purchase Date pursuant to this Agreement. The continuing truth and accuracy of each of these warranties and representations shall constitute a condition precedent to Provident Funding's obligation to make each purchase of a Mortgage Loan hereunder:

**4.01    General Representations and Warranties of the Seller**

A.    The Seller is duly organized, validly existing and in good standing under the laws of the state of its organization and each state in which it does business; and it possesses the requisite legal power and authority to enter into this Agreement and to consummate all of the transactions contemplated hereby.

B.    The Seller shall be responsible for the negligence, gross negligence, misfeasance, malfeasance or fraudulent acts of its employees and agents as they pertain to the performance by the Seller under this Agreement, including without limitation origination, processing, funding and closing of Mortgage Loans purchased by Provident Funding from the Seller, to the extent that any such negligence, gross negligence, misfeasance, malfeasance or fraudulent acts materially and adversely affect the value or marketability of one or more Mortgage Loans (or Provident Funding's interest therein).

C.    The execution, delivery and performance of this Agreement by the Seller has been duly authorized and all proceedings necessary to consummate all of the transactions contemplated by this Agreement have been taken by the Seller.

D.    The Seller has received, and will maintain, all necessary federal, state and local licenses, permits, authorizations and approvals required to conduct its business as it is presently being conducted and to perform its obligations under this Agreement.

E.    The execution and delivery of this Agreement and the sale of each and every Mortgage Loan hereunder is not and will not be a breach, violation

18

or event of default (or an event which would become an event of default with the lapse of time or notice or both) under any judgment, decree, agreement, indenture or other instrument to which the Seller is party or otherwise subject.

F.　　Neither the making or origination of any Mortgage Loan nor the consummation of the transactions contemplated by this Agreement, will result in a violation or infraction by the Seller of any applicable federal, state or local law, rule or regulation.

G.　　This Agreement is the valid and binding obligation of the Seller, enforceable against the Seller in accordance with its terms, subject to bankruptcy, insolvency, or other laws affecting creditors' rights generally from time to time in effect and general equity principles.

H.　　There is as of the date of this Agreement no pending or (to the Seller's knowledge) threatened litigation, adverse claim or action of any kind or nature which, if decided against the Seller, would materially and adversely effect the Seller's ability to perform its obligations pursuant to this Agreement, and the Seller will provide Provident Funding with written notice of any such litigation, claim or action which arises in the future and which could have such an affect within thirty (30) days after the Seller becomes aware of same.

I.　　The Seller is not the subject of any proceeding or action under any bankruptcy, insolvency or similar law, nor is the Seller the subject of any assignment for the benefit of creditors, conservatorship or receivership, or insolvent.

4.02　　**Representations and Warranties of the Seller with Respect to Mortgage Loans, Notes and Mortgage Loan Documents.**

A.　　The Seller has sole, full and complete title to each Mortgage Loan and each Mortgage Loan Document relating thereto to be sold or transferred to Provident Funding hereunder, free and clear of all liens, claims or other interests of any other Person; and the Seller has full corporate power and authority to sell, assign, transfer and convey the same to Provident Funding as provided herein.

19

**B.**    Each Mortgage Loan sold hereunder, including the related Mortgage Note, Mortgage and other Mortgage Loan Documents, is genuine, valid, binding and enforceable and is not in default in any respect; and is and will continue to be free from claims, defenses, set-off and counterclaims arising because of any act or omission of the Seller.

**C.**    The Seller acknowledges that all signatures, names, addresses, amounts and other statements of facts, including descriptions of property, appearing on the credit application and other Mortgage Loan Documents relating to each Mortgage Loan are true and correct and the borrowers named thereon were of majority age, and had, to the best of the Seller's knowledge, the legal capacity to enter into the applicable Mortgage Loan.

**D.**    The Mortgaged Property securing each Mortgage Loan is insured against all forms of casualty, including without limitation, fire, flood, wind, earthquake, and coverage under each applicable insurance policy contains a lender's loss payable endorsement naming the Seller and its successors and assigns as a loss payee and providing the Seller and its successors and assigns with coverage in the amounts required by Fannie Mae standards.

**E.**    The Seller acknowledges that Provident Funding has relied and will rely upon the information, records and documents contained in the Mortgage File for each Mortgage Loan purchased by Provident Funding hereunder and the Seller specifically warrants that each such Mortgage File includes, without limitation, all material backup documentation, investigation materials, and payment records in the Seller's possession.

**F.**    With respect to each Mortgage Loan at the time of its purchase by Provident Funding hereunder, such Mortgage Loan is not in default (including, without limitation, such Mortgage Loan is not delinquent more than thirty (30) days), the Seller has no knowledge of any existing, threatened or impending disputes or litigation involving such Mortgage Loan, the borrower thereunder, or the related Mortgaged Property, and no settlement, payment, or compromise has been made with respect thereto.

G.    All proceeds of the closing of each Mortgage Loan have been properly and fully disbursed.

H.    There are no verbal or written agreements, instruments, or understandings with the borrower or, to the Seller's knowledge, any third party in connection with any Mortgage Loan purchased by Provident Funding hereunder, other than those contained in the Mortgage Loan Documents submitted to Provident Funding in accordance with the terms of this Agreement.

I.    The appraisal of each Mortgaged Property shall be signed by a qualified appraiser, duly appointed by the Seller, and shall satisfy the Underwriting Guidelines.  All appraisers used by the Seller must be licensed or certified in accordance with applicable state and federal law.

J.    Each Mortgage Loan purchased by Provident Funding hereunder will be in full compliance with all applicable federal, state and local laws, rules and regulations, including without limitation, the Real Estate Settlement Procedures Act, the Equal Credit Opportunity Act, the Flood Disaster Protection Act, the Truth-In-Lending Act, the Gramm-Leach-Bliley Privacy Act, the Patriot Act, all regulations issued pursuant to each of the foregoing, and all laws, rules and regulations relating to usury.  Each such Mortgage Loan shall be in compliance with all applicable laws, rules and regulations concerning predatory lending and shall not be classified as "high cost," "threshold," "covered" or "predatory" under any such law, rule or regulation.  No such Mortgage Loan shall be in violation of, or classified as a high cost loan under, the Home Ownership and Equity Protection Act of 1994, as amended.

K.    There shall be a paid-up title insurance policy with respect to the Mortgaged Property relating to each Mortgage Loan in effect at the time such Mortgage Loan is purchased by Provident Funding hereunder, in an amount at least equal to the original principal balance of such Mortgage Loan.  Each such policy and the company issuing such policy must be satisfactory to Provident Funding in its sole but reasonable discretion.

L.    Each Mortgage Loan and all related Mortgage Loan Documents satisfy the Underwriting Guidelines.

Rev. 11/14/2006

M.   Each Assignment of Mortgage (for each Mortgage Loan that is not a MERS Mortgage Loan) delivered by the Seller pursuant to this Agreement is the valid and binding obligation of the Seller, enforceable against the Seller in accordance with its terms.

4.03   **Survival of This Part:**   The representations and warranties set forth in this Article IV and the rights of Provident Funding under this Article IV shall survive termination of this Agreement and the sale of each Mortgage Loan to Provident Funding, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage or the examination of, or failure to examine, any Mortgage File by Provident Funding.

## V    COVENANTS OF SELLER AND PROVIDENT FUNDING

5.01   **Furnishing Information.**   From the date hereof, and until the satisfaction of all the Seller's obligations hereunder, the Seller shall at its expense furnish to Provident Funding such documents and information as Provident Funding may reasonably request in writing in connection with this Agreement and the transactions described herein or contemplated hereby, and shall promptly notify Provident Funding in writing of any matter arising or discovered at any time that would materially alter or amend the information set forth in any document or other information previously delivered to Provident Funding, or that would render any representation or warranty made hereunder untrue as of the date such representation or warranty was made or deemed made. Upon receipt of Provident Funding's written request, the Seller will provide Provident Funding with copies of all licenses, permits, approvals, and renewals thereof, and additions thereto, which demonstrate the Seller's authority to conduct the business contemplated by this Agreement, and an Officer Certificate (satisfactory in form and content to Provident Funding in the exercise of its reasonable discretion) listing the names of all the Seller's offices and employees authorized to execute documents or otherwise to perform any act required to be performed by the Seller under the terms of this Agreement.

5.02   **Indemnification by the Seller.**   In addition to the Seller's obligations under Article III hereof, the Seller agrees to indemnify and hold Provident Funding and its partners, shareholders, directors, officers, agents, successors and assignees harmless from, and on demand by Provident Funding, to pay Provident Funding

for, any actual, direct and out-of-pocket damages, losses, costs or expenses of any nature whatsoever (including reasonable attorney's fees and costs of suit) to the extent that the same are incurred by or asserted against Provident Funding, its partners, shareholders, directors, officers, agents, successors or assignees and are attributable to any intentional or negligent acts or omissions by the Seller, its partners, shareholders, officers, directors, employees, agents, and representatives or any breach by the Seller of any representation, warranty, covenant or obligation of the Seller hereunder, which breach materially and adversely affects the value or marketability of one or more Mortgage Loans (or Provident Funding's interest therein). The indemnification contained herein shall survive the termination of this Agreement and shall not be affected by Provident Funding's taking of any of the following actions with or without notice to the Seller: (i) liquidation, repayment, retirement, sale or resale of any Mortgage Loan; (ii) foreclosure of any Mortgage Loan; (iii) sale or resale of any Mortgaged Property; or (iv) any other action or inaction by Provident Funding.

5.03    **Preservation of Financial Condition, Powers and Conduct.** During the term hereof, the Seller and Provident Funding each shall preserve its respective corporate existence and charter and all necessary licenses, permits and franchises in good standing and shall comply with all laws and regulations, act with prudence and generally in a manner consistent with the highest industry standards. It is specifically agreed that the Seller shall be required to continue satisfying the qualifications set forth in the Provident Funding Correspondent Web Site throughout the term of this Agreement and shall notify Provident Funding immediately if it no longer satisfies any such qualification.

5.04    **Books and Records.** The Seller agrees that, upon receipt of Provident Funding's written request, and subject to the Seller's receipt of a confidentiality agreement satisfactory to the Seller in the exercise of its reasonable discretion, the Seller shall cause a certified public accountant, at the Seller's expense, to provide Provident Funding, no later than 120 days after the close of each fiscal year of the Seller which ends during the term of this Agreement, with audited or reviewed financial statements of its financial condition and results of operations as of and for each such fiscal year. The Seller shall keep records satisfactory to Provident Funding (in the exercise of Provident Funding's reasonable discretion) pertaining to each Mortgage Loan and shall permit inspection thereof, and of all of its other books and records as they pertain to Mortgage Loans sold to Provident Funding hereunder, by Provident Funding at all reasonable times upon

reasonable written notice. Any such inspection undertaken by Provident Funding will be conducted so as to not unreasonably interfere with the business of the Seller.

In addition, the Seller shall, promptly following Provident Funding's request therefore from time to time, and subject to the Seller's receipt of a confidentiality agreement satisfactory to the Seller in the exercise of its reasonable discretion, provide to Provident Funding unaudited statements of the Seller's financial condition and results of operations as of and for the most recent calendar quarter.

5.05    **Requirement of Fidelity Insurance and Errors and Omissions Insurance Coverage.** During the term of the agreement the Seller shall maintain a Fidelity Bond and Errors and Omissions Insurance Coverage in forms and amounts required to satisfy any applicable requirements of Fannie Mae relating to its sellers. Seller shall notify Provident Funding promptly in the event of changes to the insurance coverage it maintains and will provide copies of such policies upon request.

5.06    **Collections.** The Seller will not accept collections, institute foreclosure proceedings or modify the terms of any Mortgage Loan on or after the date such Mortgage Loan has been purchased by Provident Funding hereunder, unless requested in writing to do so by Provident Funding. After the purchase of a Mortgage Loan by Provident Funding hereunder, the Seller shall hold for the sole benefit of Provident Funding and promptly deliver to Provident Funding in the form received all cash, notes, acceptances, checks, drafts, money orders, Insurance Proceeds, Condemnation Proceeds and instruments of payment relating to such Mortgage Loan that may come into the possession of the Seller from time to time.

5.07    **Endorsements and Other Documents.** The Seller agrees, upon the request of Provident Funding from time to time, to endorse to Provident Funding any notes, acceptances, checks, drafts, money orders, Insurance Proceeds, Condemnation Proceeds and Instruments of payment relating to each Mortgage Loan that has been purchased by Provident Funding hereunder, and to execute such releases, discharges, satisfactions and any and all other documents requested by Provident Funding (in the exercise of its reasonable discretion) in connection with such Mortgage Loan.

24

5.08    **Post-Purchase Audits.** In addition to the pre-purchase audit of each Mortgage Loan contemplated by Section 2.06, Provident Funding also will conduct a post-purchase audit of such Mortgage Loans as Provident Funding may choose from time to time.

In the event that such post-purchase audits indicate that errors and exceptions have occurred with respect to fifteen percent (15%) or more of the Mortgage Loans purchased during any one calendar month, Provident Funding shall have the option to suspend the Seller's rights under this Agreement or may terminate this Agreement at any time. In addition to the foregoing, in the event all such errors and exceptions relating to all such Mortgage Loans are not cured within thirty (30) days to the satisfaction of Provident Funding, and such errors and exceptions constitute a breach of any applicable representation or warranty of the Seller hereunder, which breach materially and adversely affects the value or marketability of the related Mortgage Loans (or Provident Funding's interest therein), in its sole discretion, Provident Funding may require the Seller to repurchase such Mortgage Loans pursuant to Article VI.

5.09    **Proprietary Information.** In the course of performing this Agreement, the Seller may utilize proprietary information owned by Provident Funding. In addition, the Seller will have access to and become acquainted with what Provident Funding and the Seller acknowledge are trade secrets and confidential information of Provident Funding, including policies and procedures, information and data concerning Provident Funding and its affiliates, the identity of Provident Funding's investors and other customers, and knowledge of the financial condition, needs and requirements of such investors and customers, all of which Provident Funding has developed at its expense and which is proprietary to Provident Funding (hereafter called "Provident Funding Proprietary Information"). The Seller shall not provide access to Provident Funding's Proprietary Information to anyone who is not an employee of the Seller, disclose any such Provident Funding Proprietary Information, or directly or indirectly cause any of the foregoing to be disclosed, sold, or transferred to, or utilized in any way by, any other Person. Furthermore, the Seller agrees that Provident Proprietary Information shall be used by it and its authorized employees solely for the business purpose of performing its obligations under this Agreement, that Provident Funding is the sole owner thereof and that the Seller has no right, title, or interest therein. Upon termination of this Agreement, the Seller shall promptly deliver possession of all such Provident Funding Proprietary Information to

PF Correspondent Seller Agreement                                    Rev. 11/14/2006

Provident Funding and no longer make any use whatsoever of any of the foregoing. The provisions of this Section 5.08 shall be enforceable by a court order of specific performance or injunction should the Seller fail to comply with the terms hereof. In addition, in the event the Seller fails to comply with the terms hereof, Provident Funding shall be entitled to exercise all such additional rights and remedies it may have pursuant to this Agreement or applicable law. Notwithstanding anything herein to the contrary, it is understood and agreed that "Provident Funding Proprietary Information" shall not include any information which: (a) is previously known to the Seller; (b) is in or enters the public domain through no wrongful act of the Seller; (c) is rightfully received from a third party without restriction and without breach of this Agreement; (d) is furnished to a third party by Provident Funding without similar restrictions on such party's rights; (e) is approved for release by Provident Funding's written authorization; or (f) is required to be disclosed by order of a governmental agency, legislative body or a court of competent jurisdiction.

5.10    **Further Assurances.** At any time and from time to time each party hereto shall take such further action as the other party hereto may reasonably believe to be necessary or desirable to carry out the intent of this Agreement, including, without limitation, the execution and delivery of such agreements, documents, certificates, instruments and notifications as may be necessary to evidence the vesting in such other party of its rights as contemplated by this Agreement.

5.11    **Provident Funding's Covenants.** Provident Funding hereby covenants and agrees that, with respect to each Mortgage Loan, at all times following the applicable Funding Date, Provident Funding shall service such Mortgage Loan in accordance with those mortgage servicing practices of prudent lending institutions that service mortgage loans of the same type as such Mortgage Loan in the jurisdiction where the related Mortgaged Property is located.

VI    **SELLER'S REPURCHASE OBLIGATIONS**

6.01    **Repurchase Obligation:** The Seller agrees to repurchase any Mortgage Loan sold to Provident Funding pursuant to this Agreement within ten (10) business days of receipt of written notice from Provident Funding of any of the following events or circumstances:

26

A.   Any breach by the Seller of any representation or warranty under this Agreement; provided, however, that (i) the Seller shall have been given written notice of such breach and shall have failed to cure it to Provident Funding's satisfaction within thirty (30) days following the Seller's receipt of such notice, and (ii) such breach materially and adversely affects the value and/or marketability of the related Mortgage Loan or Mortgage Loans (or Provident Funding's interest therein).

B.   Any investor to whom Provident Funding shall have sold or transferred such Mortgage Loan shall demand its repurchase by Provident Funding or shall demand indemnification with respect to potential losses on such Mortgage Loan from Provident Funding due to inaccuracy of any representation or warranty made by the Seller with respect to such Mortgage Loan or any loan quality defect which adversely affects such investor's interests with respect to such Mortgage Loan or any default by the Seller hereunder which adversely affects such investor's interests with respect to such Mortgage Loan;

C.   Any failure by a Mortgagor to make the Mortgagor's first, second, or third Monthly Payment with a due date subsequent to the Purchase Date that is not received by Provident Funding or their successors or assignees, whether from the Mortgagor directly or forwarded by the Seller if the Mortgagor has submitted the payment to the Seller, within sixty (60) days of the first payment due date or thirty (30) days from the second or third payment due date, the seller shall, at the Provident Funding's option, and no later than five (5) business days after the receipt of notice from Provident Funding, repurchase such Mortgage Loan at the Repurchase Price; however, that (i) such failure is not attributable to an issue involving the transfer of servicing from the Seller to Provident Funding, and (ii) the Seller receives written notice of such failure by no later than ninety (90) days following the date of such delinquency or the date that Provident Funding is made away of such delinquency by any successors or assignees, if later than the date of such delinquency; or

D.   The Seller is obligated to repurchase such Mortgage Loan pursuant to the provisions of Section 5.08 or any other provision of this Agreement

27

Subject to the terms of Section 6.01 C above, there is no deadline by which Provident Funding must invoke its rights pursuant to this Section 6.01 with respect to any Mortgage Loan or Loans.

6.02   **Repurchase Price:** The price the Seller shall pay to Provident Funding for each Mortgage Loan that the Seller is obligated to repurchase pursuant to Section 6.01, notwithstanding the representations and warranties made by any third party underwriter or service provider with respect to such Mortgage Loan, shall equal the sum of:

A.   The original Purchase Price of such Mortgage Loan, including without limitation the Premium, if any (but in any event not less than par) less the sum of all principal reductions of such Mortgage Loan after the original purchase thereof by Provident Funding;

B.   Plus all accrued and unpaid interest on such Mortgage Loan from the Purchase Date of such Mortgage Loan through and including the first day of the month following the month during which the repurchase of such Mortgage Loan is made by the Seller pursuant to this Article III;

C.   Plus all reasonable, out-of-pocket expenses, including but not limited to, reasonable fees and expenses of counsel, incurred by Provident Funding in enforcing the Seller's obligation to repurchase such Mortgage Loan;

D.   Plus the entire "Final SRP" as shown in the Lock Confirmation relating to such Mortgage Loan.

6.03   **Return of Notes:** Upon each such repurchase of a Mortgage Loan by the Seller pursuant to this Article VI, Provident Funding shall promptly endorse the Mortgage Note (without recourse), shall assign the related Mortgage (without recourse and in recordable form) to the Seller (or its designee), and shall promptly take any and all other actions necessary or appropriate to vest title in the applicable Mortgage Loan in the Seller (or its designee).

6.04   **No Waiver:** Except to the extent that Provident Funding acknowledges in writing a defect pertaining to a Mortgage Loan and purchases such Mortgage Loan notwithstanding such defect, Provident Funding's prior knowledge of any fact, at any time, concerning any Mortgage Loan shall neither impair Provident Funding's rights nor constitute a waiver of the Seller's obligations hereunder. In the event the Seller does not comply with the terms of any request made hereunder to

28

indemnify Provident Funding or repurchase any Mortgage Loan, Provident Funding may, in addition to such other rights and remedies as may be specified herein or available under law, suspend or terminate all of its obligations hereunder with or without notice.

6.05    Notwithstanding anything herein to the contrary, it is understood and agreed that the Seller is not the insurer or guarantor of the Mortgage Loans; provided, however, that this Section 6.05 is not intended to lessen or diminish the representations and warranties of the Seller specified in this Agreement, or Provident Funding's rights and remedies with respect to a breach by the Seller of any such representations and warranties.

6.06    **Survival of This Part:** The rights of Provident Funding under this Article VI shall survive termination of this Agreement and the sale of each Mortgage Loan to Provident Funding, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage or Provident Funding's examination or failure to examine any Mortgage File.

VII    **COMPENSATION AND FEES**

7.01    **Documentation Review Fee.** If specified in the applicable Purchase Price and Terms Agreement, the Seller agrees to pay to Provident Funding a fee for each Mortgage Loan purchased by Provident Funding hereunder (the "Documentation Review Fee"). The Documentation Review Fee shall be payable upon the purchase of each Mortgage Loan purchased by Provident Funding hereunder and shall be in the amount specified in the Purchase Price and Terms Agreement.

7.02    **Payment of Purchase Price.** The Purchase Price for each Mortgage Loan purchased by Provident Funding hereunder shall be in the amount specified in the related Purchase Price and Terms Agreement and shall be wired to the address specified in such Purchase Price and Terms Agreement.

VIII    **Miscellaneous**

8.01    **Notices.** All notices to be given in connection with this Agreement shall be in writing and delivered to a party at its respective address appearing below, or at such other address which may be designated in writing by such party pursuant to the provisions hereof, by personal delivery, e-mail, facsimile transmission,

29

overnight delivery, telefax (with telephonic confirmation of receipt) or mail.  Each such notice should be effective upon receipt.

**If to Provident Funding:**

**Provident Funding Associates, L.P.**
**1633 Bayshore Highway, Suite 155**
**Burlingame, CA 94010**
**ATTN: Compliance Officer - Correspondent Division**
**Telephone:**_____
**Facsimile:**_____
**E-Mail:**_____

**If to the Seller:**

**Quicken Loans Inc.**
**20255 Victor Parkway**
**Livonia, MI 48152**
**Attention: Christopher Arsenault**
**Telephone: (734) 805-4963**
**Facsimile: (734) 805-8786**
**E-mail: ChristopherArsenault@Quickenloans.com**

8.02   **Independent Contractors.**  This Agreement shall not be deemed to constitute the parties hereto as partners or joint venturers, nor shall any party be deemed to be the agent of the other party.  The parties hereto agree that the Seller is neither an agent nor an employee of Provident Funding, nor of any parent or other affiliate of Provident Funding, and may not be construed as such by reason of this Agreement. It is agreed that the Seller is an independent contractor, and is expressly prohibited from holding itself out as an agent, representative or employee of Provident Funding, or of any parent or other affiliate of Provident Funding. Without limiting the foregoing, the Seller shall not represent to any borrower or other person that it has any authority to commit Provident Funding to make, fund or purchase any Mortgage Loan.

8.03   **Entire Agreement.**   This Agreement (including the Provident Funding Correspondent Web Site) contains the entire agreement among the parties

hereto with respect to the subject matter hereof and supersedes any and all prior agreements, arrangements, proposals or understandings, written or oral, by or between the parties hereto with respect to the subject matter hereof.

8.04    **Choice of Law.** This Agreement shall be construed in accordance with the laws of the State of California (but not including the choice of law rules thereof). The invalidity or unenforceability of any provision or provisions of this Agreement shall not affect the validity or enforceability of any other provision hereof. Any suit or proceeding relating to this Agreement shall be brought in the federal or state courts located in, California, which courts shall have sole and exclusive subject matter and other jurisdiction in connection with such suit or proceeding, and venue shall be appropriate for all purposes in such courts.

8.05    **Attorney's Fees.** In the event of a dispute between the parties hereto or their successors, arising out of this Agreement, the prevailing party shall be entitled to recover costs, including reasonable attorney's fees actually incurred in connection therewith.

8.06    **Successors and Assigns.** This Agreement shall bind and benefit the Seller and Provident Funding and their respective successors and assigns; provided, however, that neither party shall have the power or right to assign this Agreement or any of its rights or obligations hereunder without the prior written consent of the other party; further provided, however, that Provident Funding shall have the right to assign its rights and obligations hereunder to any of its affiliates without the consent of the Seller.

8.07    **Miscellaneous.** A party's omission or delay in exercising any of its optional or absolute rights or remedies under this Agreement shall not constitute a waiver by such party, nor operate to bar such party from the exercise of any such rights or remedies. Any waiver by any party of any default shall not operate as a waiver of any other or subsequent default. All rights and remedies provided to any party herein are not exclusive of any other rights or remedies at law or equity, are cumulative and not alternative, and may be exercised by such party simultaneously or in such order as such party deems to be in its best interests. Captions and paragraph headings are for convenience only.

8.08    **No Solicitation.** The Seller cannot seek to refinance any Mortgage Loan purchased by Provident Funding hereunder for a period of 36 months after the Purchase Date of such Mortgage Loan. In addition to the remedies described in

Section III and elsewhere herein, in the event the Seller breaches this covenant, Provident Funding shall be entitled to terminate this Agreement immediately upon written notice to the Seller and to pursue all such remedies as may be available at law or in equity. Notwithstanding the foregoing, it is understood and agreed that promotions undertaken by the Seller or any affiliate of the Seller, which promotions are directed to the general public at large, or segments thereof, provided that no segment shall consist primarily of the Mortgagors under the Mortgage Loans, including, without limitation, mass mailing based on commercially acquired mailing lists, newspaper, radio, television and/or internet advertisements, shall not constitute solicitation under this Section 8.08.

8.09    **Termination.**  Either party may terminate this Agreement at any time in its sole discretion. Termination shall not relieve Provident Funding of the obligation to purchase Mortgage Loans with respect to which the parties have entered into a Purchase Price and Terms Agreement, and shall not relieve the Seller of its obligations to sell to Provident Funding Mortgage Loans with respect to which the parties have entered into a Purchase Price and Terms Agreement. Further, termination of this Agreement by either party shall not affect the rights, liabilities and obligations of the parties as to Mortgage Loans previously purchased under this Agreement.

8.10    **Not Exclusive.**  The Seller acknowledges that Provident Funding may enter into other agreements or understandings with other parties for the purchase, funding or origination of loans in the areas in which the Seller presently conducts or may conduct business, that Provident Funding may seek to originate, fund and purchase loans in a manner that may compete with the Seller, and that this Agreement shall not be deemed to restrict or impede such actions by Provident Funding in any way.

   **[Signatures appear on following page]**

**IN WITNESS WHEREOF**, each of the undersigned has caused this Agreement to be duly executed by its duly authorized representative as of the date first above written.

**Provident Funding**                              **"Seller"**

**PROVIDENT FUNDING ASSOCIATES, L.P.**        **QUICKEN LOANS INC.**

By: ___Paul Pedisson_____ General Partner      By: _____
                                                    Robert Walters

By: _____
    (Signature)

Its: __Vice President_____                  Its: Executive Vice President
              (Title)

Attested:                                        Attested:

By: _____                     By: _____
              (Signature)                            Chris Arsenault

Its: __Director, Correspondent Lending___       Its: Manager, Capital Markets
              (Title)

33

## PURCHASE PRICE AND TERMS AGREEMENT

This PURCHASE PRICE AND TERMS AGREEMENT (the "Purchase Price and Terms Agreement"), dated _____, 200__, between Quicken Loans Inc., a Michigan corporation, located at 20555 Victor Parkway, Livonia, Michigan 48152 (the "Seller") and Provident Funding Associates, L.P. ("Provident Funding") is made pursuant to the terms and conditions of that certain Correspondent Seller Agreement (the "Agreement") dated as of October 1, 2006, between the Seller and Provident Funding, the provisions of which are incorporated herein as if set forth in full herein, as such terms and conditions may be modified or supplemented hereby. All initially capitalized terms used herein unless otherwise defined shall have the meanings ascribed thereto in the Agreement.

Provident Funding hereby purchases from the Seller and the Seller hereby sells to Provident Funding, all of the Seller's right, title and interest in and to the Mortgage Loans described on the Mortgage Loan Schedule annexed hereto as Schedule I, pursuant to and in accordance with the terms and conditions set forth in the Agreement, as same may be supplemented or modified hereby. Hereinafter, the Seller shall interim service the Mortgage Loans for the benefit of Provident Funding and all subsequent transferees of the Mortgage Loans pursuant to and in accordance with the terms and conditions set forth in the Agreement.

1.    Definitions

For purposes of the Mortgage Loans to be sold pursuant to this Purchase Price and Terms Agreement, the following terms shall have the following meanings:

Custodian:                                          _____

Cut-off Date:                                       _____ [ ], 20__

Funding Date:                                       _____, 20__

Mandatory Commitment Amount:                        _____

Package Due Date:                                   _____

Pair Off Fee Assessment Date:                       _____

Pool Tolerance:                                     _____

Purchase Price Percentage:                          [ ]%

Purchased Principal Balance
(Aggregate, as of the Cut-Off Date):                $[ ]

Servicing Transfer Date:                            _____, 20__, to Purchaser's
                                                    designee, _____

Underwriting Guidelines                             First lien, _____ rate, conventional
                                                    mortgage loans

Weighted Average
Mortgage Loan Note Rate:                            [ ]%

<u>Wire Transfer Instructions for Seller:</u>

As supplied by Seller upon receipt of collateral files.

<u>Additional Closing Conditions:</u>

In addition to the conditions specified in the Agreement, the obligation of each of the Seller and Provident Funding is subject to the fulfillment, on or prior to the applicable Funding Date, of the following additional conditions:  <u>To be determined upon pre-purchase review</u>.

<u>Additional Loan Documents:</u>

In addition to the contents of the Mortgage File specified in the Agreement, the following documents shall be delivered with respect to the Mortgage Loans:  <u>To be determined upon pre-purchase review</u>.

<u>Additional Representations and Warranties:</u>

In addition to the representations and warranties set forth in the Agreement, as of the date hereof, the Seller makes the following additional representations and warranties with respect to the Mortgage Loans: <u>To be determined upon pre-purchase review</u>.

Except as modified herein, the Agreement shall remain in full force and effect as of the date hereof

IN WITNESS WHEREOF, the parties hereto have caused their names to be signed hereto by their respective duly authorized officers as of the date first above written.

QUICKEN LOANS, INC.

By:_____
Name:_____
Title:_____

PROVIDENT FUNDING ASSOCIATES, L.P.

By:_____
Name:_____
Title:_____

## SCHEDULE I

### MORTGAGE LOAN SCHEDULE

Pool(s) _ (__loans) with an aggregate principal balance of $_____ as detailed in _____, supplied to Provident Funding on _____, 2006.

## Repurchase

### Early Payment Default

| Loan # | Borrower Name |
|---|---|
| 1117030338 | DONOVAN-JARRETT |
| 1117032573 | HARRIS |
| 1117012046 | HALE |
| 1117040304 | REYNOLDS |
| 1116110740 | POMERLEAU |
| 1116120627 | BUIE |
| 1117011577 | WICKHAM |
| 1117020909 | HALL, JR. |
| 1117022317 | FREDERICK, SR. |
| 1117030718 | JURZAK |
| 1117022954 | HARRISON |
| 1117040530 | STEWART |
| 1116121615 | WALLMANN |
| 1117011370 | HALAS |
| 1117012733 | KENAYA |
| 1117021141 | BAKSAI |
| 1117022860 | KENNEDY |
| 1117030552 | AUSTIN |
| 1117040350 | WARD |
| 1117040521 | DE LEON |
| 1117040858 | MAURUTT |
| 1117041028 | ROGERS |
| 1117041703 | SEIDNER |
| 1116112041 | TAYLOR-WALTON |
| 1117010461 | BYRD, JR. |
| 1117011357 | GONZALEZ |
| 1117012273 | SEARS |
| 1117012630 | BOYKINS |
| 1117022859 | COPELAND |
| 1117030588 | BOSWELL |
| 1117041096 | HEWETT |

### Other Defects

| Loan # | Borrower Name |
|---|---|
| 1117012591 | ESCARENO |
| 1117030628 | HUFF |
| 1117030883 | LEE |
| 1117032066 | MINICUCI |
| 1117032225 | BELLI |
| 1117032227 | SUSMARSKI |
| 1116120631 | MCNAIR |

XHIBIT    2

**Indemnity**

**Early Payment Defaults**

| Loan # | Borrower Name |
|---|---|
| 1117012046 | HALE |
| 1117040304 | REYNOLDS |
| 1117022162 | DAIGLE-POWELL |
| 1116101434 | MALONE |
| 1116110401 | BRURNETT |
| 1116110434 | JORDAN |
| 1116111243 | SCHUBERT |
| 1116120663 | DESANTIS |
| 1117011422 | MARSHALL |
| 1117012540 | RADEMACHER |
| 1117020915 | WRIGHT |
| 1117022201 | CAMACHO |
| 1116101721 | BOMIA |
| 1117012873 | MILBURN, JR. |
| 1117022563 | BURNS |
| 1116100265 | HAMAMEH |
| 1116110214 | CISNEROS |
| 1116111709 | CAMPBELL |
| 1116120525 | BENNETT |
| 1116120760 | MENDES |
| 1116120778 | ZABLOCKI |
| 1116120896 | MADDEN |
| 1116121355 | BROWN |
| 1116121591 | MYERS |
| 1117010127 | SCHREIFELS |
| 1117010139 | SCHMITT |
| 1117010728 | FLOREZ-ZENGER |
| 1117011594 | LAWRENCE |
| 1117012145 | CHANDLER |
| 1117012418 | GRANT |
| 1117012521 | WAGNER |
| 1117020774 | PEPPER |
| 1117022148 | GREGORY |
| 1116120505 | ROSENDAIL |
| 1117012884 | FINCHER |
| 1117020730 | BLACKIE |

XHIBIT    3

**SUMMONS**
**(CITACIÓN JUDICIAL)**

FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
QUICKEN LOANS INC., and Does 1 through 20

20, Inclusive
**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
PROVIDENT FUNDING ASSOCIATES, L.P.

**FILED**
SAN MATEO COUNTY

SEP 2 8 2007

Clerk of the Superior Court
By _____
DEPUTY CLERK

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is: <br> *(El nombre y dirección de la corte es):* <br> SAN MATEO SUPERIOR COURT <br> 400 County Center <br> Redwood City, CA  94063 | **CASE NUMBER** <br> *(Número del Caso):* <br> CIV 466470 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Neil R. O'Hanlon, SBN 67018                    (310) 785-4600
HOGAN & HARTSON LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA  90067

DATE: SEP 2 8 2007    JOHN C. FITTON    Clerk, by _____, Deputy
*(Fecha)*                    *(Secretario)*                    *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

# NOTICE OF CASE MANAGEMENT CONFERENCE

PROVIDENT

**FILED**
**SAN MATEO COUNTY**

SEP 2 8 2007

Clerk of the Superior Court
By _____
DEPUTY CLERK

vs.

QUICKEN

Case No. _____ CIV 4 6 6 4 7 0

Date: _____ FEB 6 2008

Time: 9:00 a.m.

Dept. 2 – on Tuesday & Friday
Dept. 8 – on Wednesday & Thursday

You are hereby given notice of your Case Management Conference. The date, time and department have been written above.

1. In accordance with applicable California Rules of Court and Local Rules 2.3(d)1-4 and 2.3(m), you are hereby ordered to:

   a. Serve all named defendants and file proofs of service on those defendants with the court within **60 days** of filing the complaint (CRC 201.7).

   b. Serve a copy of this notice, Case Management Statement and ADR Information Sheet on all named parties in this action.

   c. **File and serve a completed Case Management Statement at least 15 days** before the Case Management Conference [CRC 212(g)]. Failure to do so may result in monetary sanctions.

   d. **Meet and confer**, in person or by telephone, to consider each of the issues identified in CRC 212(f) no later than **30 days** before the date set for the Case Management Conference.

2. **If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned. The Order To Show Cause hearing will be at the same time as the Case Management Conference hearing. Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.**

3. Continuances of case management conferences are highly disfavored unless good cause is shown.

4. Parties may proceed to an appropriate dispute resolution process ("ADR") by filing a Stipulation To ADR and Proposed Order (see attached form.). If plaintiff files a Stipulation To ADR and Proposed Order electing to proceed to judicial arbitration, the Case Management Conference will be taken off the court calendar and the case will be referred to the Arbitration Administrator. If plaintiffs and defendants file a **completed** stipulation to another ADR process (e.g., mediation) **10 days** prior to the first scheduled case management conference, the case management conference will be continued for 90 days to allow parties time to complete their ADR session. The court will notify parties of their new case management conference date.

5. If you have filed a default or a judgment has been entered, your case is not automatically taken off the Case Management Conference Calendar. If "Does", "Roes", etc. are named in your complaint, they must be dismissed in order to close the case. If any party is in bankruptcy, the case is stayed only as to that named party.

6. You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.

7. The Case Management judge will issue orders at the conclusion of the conference that may include:

   a. Referring parties to voluntary ADR and setting an ADR completion date;

   b. Dismissing or severing claims or parties;

   c. Setting a trial date.

8. The Case Management judge may be the trial judge in this case.

For further information regarding case management policies and procedures, see the court website at www.sanmateocourt.org.

* Telephonic appearances at case management conferences are available by contacting CourtCall, LLC, an independent vendor, at least 5 business days prior to the scheduled conference (see attached CourtCall information).

**EXHIBIT 2**

## AFFIDAVIT OF DELIVERY BY MAIL

PROVIDENT FUNDING

_____

vs

QUICKEN LOANS

_____

**FILED**
**SAN MATEO COUNTY**

SEP 2 8 2007

Clerk of the Superior Court

By _____
               DEPUTY CLERK

CASE # _____ CIV 4 6 6 4 7 0

**DOCUMENTS**

Endorsed filed copies of the Complaint, Summons, Notice of Case Management
Conference and ADR Packet information.

I declare under penalty of perjury that I delivered back to the customer, a true copy of the
foregoing documents. Executed on the above-filed date at the Hall of Justice & Records
in Redwood City, CA 94063.

By **R. MONTGOMERY**
   _____
   Deputy Court Clerk